## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Rafael Barrios and Connie Barrios, | : | COMPLAINT AND DEMAND |
| | : | FOR JURY |
| TRIAL Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Case No._____ |
| AbbVie Inc., | : | |
| Abbott Laboratories, Inc., and | : | |
| Auxilium Pharmaceuticals, Inc. | : | |
| | : | |
| | : | |
| Defendants | : | |

## **COMPLAINT**

Plaintiffs, Rafael Barrios ("Barrios") and his wife Connie Barrios ("Ms. Barrios"), by and through undersigned counsel, by way of complaint against AbbVie Inc. and Abbott Laboratories, Inc. (hereinafter "AndroGel Defendants"), and Auxilium Pharmaceuticals, Inc. ("Testim Defendant")(collectively hereinafter "Defendants"), allege as follows upon information and belief:

## **INTRODUCTION**

1.      This case involves the prescription drugs AndroGel and Testim, which are manufactured, sold, distributed and promoted by Defendants as testosterone replacement therapies.

2.      Defendants, respectively, misrepresented that AndroGel and Testim are safe and effective treatments for hypogonadism or "low testosterone," when in fact the drug causes

serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

3.      Defendants engaged in aggressive, direct-to-consumer and physician marketing and advertising campaigns for the drugs AndroGel and Testim.   Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "low T."

4.      Consumers of AndroGel and Testim were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thrombolytic events.

## PARTIES

5.      Plaintiff Rafael G. Barrios is a competent adult and resident of Metairie, Louisiana.

6.       Plaintiff Connie Barrios is a competent adult and resident of Metairie, Louisiana, and wife of Rafael Barrios.

7.      Defendant AbbVie is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064.

8.      Defendant Abbot Laboratories, Inc. is a corporation organized and existing under the laws of the state of Illinois and maintains its principal place of business at 100 Abbot Park Road, Abbott Park, Illinois 60064.

9.       By way of background, Unimed Pharmaceuticals Inc., originally developed AndroGel and sought FDA approval in 1999.  Before the drug was approved by the FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed Pharmaceuticals, Inc. and subsequently

2

brought AndroGel to market.  In 2010, Defendant Abbott Laboratories, Inc. acquired Solvay's pharmaceutical division, which included AndroGel.  Then, in 2013, Abbott created AbbVie, a company composed of Abbott's former proprietary pharmaceutical business, which included AndroGel.

10.   At all times relevant to this Complaint, the AndroGel Defendants were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone replacement therapy drug sold under the name AndroGel throughout the United States, including the State of Louisiana.

11.   Defendant, Auxilium Pharmaceuticals, Inc., is a Delaware corporation which has its principal place of business at 640 Lee Road, Chesterbrook, Pennsylvania 19087. Plaintiffs aver that Auxilium conducted business and derived substantial revenue from sales of Testim within the State of Louisiana.

12.   At all times relevant to this Complaint, Auxilium was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone replacement therapy drug sold under the name Testim throughout the United States, including the State of Louisiana.

## **JURISDICTION AND VENUE**

13.   The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Section §1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     Venue is proper in the U.S. District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391, because, inter alia, Barrios was prescribed and applied both AndroGel and Testim, and suffered multiple severe adverse health events related to the use of AndroGel and Testim in Jefferson Parish Louisiana.

15.     The U.S. District Court for the Eastern District of Louisiana has personal jurisdiction over the Defendants because Defendants transact business in Louisiana and the wrongs complained of herein arose in Louisiana.

16.     This Court has supplemental jurisdiction over any corollary state claims pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

17.     This action is for damages brought by Plaintiffs, Rafael Barrios and his wife Connie Barrios.  Barrios was prescribed and supplied with, received, taken and applied the prescription drugs AndroGel and Testim, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants.  This action seeks, among other relief, general and special damages and equitable relief in order to enable Barrios to treat and monitor the dangerous, severe and life-threatening side effects caused by this drug, as well as the loss of consortium and companionship suffered by Ms. Barrios.

18.     Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused and/or were substantial factors in Plaintiffs' injuries and damages.

19.     At all times herein mentioned, the AndroGel Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of research,

licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug AndroGel for the use and application by Barrios.

20.    At all times herein mentioned, the Testim Defendant was engaged in the business of, or was successor in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Testim for the use and application by Barrios.

21.    At all times herein mentioned, Defendants were authorized to do business within the state of residence of Plaintiff.

22.    At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Barrios herein.

23.    Barrios used the Defendants' products, AndroGel and Testim during the time period between 2006 and 2014.  During this time period of usage, Barrios suffered multiple significant adverse health events, including two strokes, which Barrios alleges were caused by the use of AndroGel and/or Testim.

24.    Plaintiff Barrios files this lawsuit within the applicable limitations period of first suspecting that said drugs caused the appreciable harm sustained by Plaintiff. Plaintiff could

not, by the exercise of reasonable diligence, have discovered the wrongful case of Plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when Barrios' injuries were discovered their cause was unknown to Barrios. Barrios did not suspect, nor did he have reason to suspect, that he had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action.  Additionally, Barrios was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the drugs AndroGel and Testim are safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Barrios to discover a potential cause of action.

## OVERVIEW

25.    Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

26.    In 1999, when Unimed Pharmaceuticals Inc., one of the AndroGel Defendants' predecessor companies, asked for FDA approval of AndroGel, it asserted that hypogonadism was estimated to affect approximately "one million American men."

27.    In 2000, when the FDA approved AndroGel, the company announced that the market was "four to five million American men." By 2003, the number increased to "up to 20 million men."  However, a study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism.  For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they

6

received a testosterone prescription.

28.     The Defendants coordinated a massive advertising campaign designed to convince men that they suffered from low testosterone. The Defendants orchestrated a national disease awareness media blitz that purported to educate male consumers about the signs of low testosterone. The marketing campaign consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential testosterone users.

29.     The advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

30.     Since the FDA approved both AndroGel and Testim, respectively, Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

31.     While running their disease awareness campaigns, Defendants promote their respective products, AndroGel and Testim, as easy to use topical testosterone replacement therapies. Defendants contrast their products' at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

32.     Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease. Although prescription testosterone replacement therapy had been available

for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

33.    What consumers received, however, were not safe drugs, but a product which causes life-threatening problems, including strokes and heart attacks.

34.    The marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of AndroGel and Testim are safe for human use, even though Defendants knew these to be false, and even though Defendants had no reasonable grounds to believe them to be true.

35.    There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with increased the risk of heart attacks and strokes. Defendants knew or in the exercise of reasonable care should have known that their respective products, AndroGel and Testim, were defectively designed, unreasonable dangerous in normal use, and highly likely to cause injury or death, but it failed to provide adequate warnings about these known risks.

## FACTUAL ALLEGATIONS

36.    The Food and Drug Administration approved AndroGel 1% on February 28, 2000 for the treatment of adult males who have low or no testosterone (AndroGel 1.62% was approved in April, 2011). After FDA approval, AndroGel was widely advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

37.    AndroGel, is a hydroalcoholic gel containing testosterone in either 1% or 1.62%, applied to the chest, arms or stomach and enters the body through transdermal absorption. The AndroGel 1.62% product also contains isopropyl myristate as an ointment and ethanol for absorption enhancement.

8

38.     The Food and Drug Administration approved Testim on October 31, 2002, for the treatment of adult males who have low or no testosterone. After FDA approval, Testim was widely advertised and marketed by Auxilium Pharmaceuticals, Inc. as a safe and effective testosterone replacement therapy.

39.     Testim is a hydro-alcoholic gel containing testosterone. Testim is applied to the shoulders and upper arms. Testim enters the body through transdermal absorption.

40.     Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

41.     The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

42.     In men, testosterone levels normally begin a gradual decline after the age of thirty.

43.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood.  However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication.  Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

44.     AndroGel and/or Testim may produce undesirable side effects to patients who use the drugs, including but not limited to, myocardial infarction, stroke, and death.

45.     In some patient populations, AndroGel and/or Testim use may increase the incidence of myocardial infarctions and death by over 500%.

46.     In addition to the above, AndroGel and Testim have been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied testosterone. Patients taking

9

testosterone may experience enlarged prostates and increased serum prostate-specific antigen levels.

47.    In 2009 the FDA issued a black box warning for AndroGel prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause physical changes in women exposed to the drug and cause fetal damage with pregnant women who come into secondary contact with testosterone.

48.    Defendants' marketing strategies have been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of its products.

49.    Defendants successfully marketed their respective products, AndroGel and Testim, by undertaking a "disease awareness" marketing campaign.  This campaign sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to "Low-T."

50.    The Defendants' advertising programs, sought to create the image and belief by consumers and their physicians that the use of their respective products was a safe method of alleviating their symptoms, had few side effects, and would not interfere with their daily lives, even though Defendants knew or should have known these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

51.    Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using AndroGel or Testim, respectively. Defendants deceived potential users by relaying positive information through the press, including

testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

52.     Defendants concealed material, relevant information from potential AndroGel and Testim users and minimized user and prescriber concern regarding the safety of their respective products.

53.     In particular, in the warnings Defendants give in their commercials, online and print advertisements, Defendants fail to mention any potential cardiac or stroke side effects and falsely represents that Defendants adequately tested their respective products for all likely side effects.

54.     As a result of Defendants' advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for AndroGel and/or Testim.  If Barrios had known the risks and dangers associated with AndroGel and/or Testim, he would not have taken the products and consequently would not have been subject to their serious side effects.

**<u>SPECIFIC FACTUAL ALLEGATIONS</u>**

55.     Plaintiff Raphael Barrios was 63 years of age, in 2006, when he was prescribed testosterone replacement therapy for symptoms he attributed to low testosterone after viewing Defendants' advertisements.

56.      Barrios was prescribed and took AndroGel and Testim between 2006 and 2014.

57.     The AndroGel and Testim he consumed caused physical and emotional impairment which affected his life. These impairments included, but were not limited to multiple strokes.

11

58.     Prior to using AndroGel and Testim Barrios had no history of these cardiac events.

59.     As a result of the injuries sustained by Barrios, Ms. Barrios, his wife, suffered injury in the form of loss

of consortium and companionship with her husband.

60.     Plaintiffs have and will sustain significant general and special damages, including medical expenses, lost wages, diminished economic horizons, loss of support, loss of love, affection, and companionship, and other items of recoverable damages for which they seek maximum recovery as a matter of law.

61.     Had Defendants properly disclosed the risks associated with the use of their products AndroGel and Testim, Barrios would have avoided the risk of injury, including but not limited to the strokes, either not using testosterone replacement therapy at all, severely limiting the dosage and length of use, and/or by closely monitoring the degree to which the drugs were adversely affecting his health.

## FEDERAL REQUIREMENTS

62.     Defendants had the obligation to comply with the law in the manufacture, design, and sale of their respective products, AndroGel and Testim.

63.     Upon information and belief, Defendants, each individually, *in solido*, and/or jointly, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq*.

64.     With respect to the testosterone replacement drugs AndroGel and Testim, the respective Defendants, upon information and belief, have or may have failed to comply with all federal standards applicable to the sale of prescription drugs, including, but not limited to, one or more of the following violations:

a.      The prescription drugs AndroGel and/or Testim are adulterated pursuant to 21 U.S.C.§ 351 because, among other things, they fail to meet established performance standards, and/or the methods, facilities, or controls used for their manufacture, packing, storage or installation are not in conformity with federal requirements. See, 21 U.S.C. § 351.

b.      The prescription drugs AndroGel and/or Testim are adulterated pursuant to 21 U.S.C.§ 351 because, among other things, their strength differs from, or their quality or purity falls below, the standard set forth in the official compendium for AndrtoGel and/or Testim, and such deviations are not plainly stated on its labels.

c.      The prescription drugs AndroGel and/or Testim are misbranded pursuant to 21 U.S.C. §352 because, among other things, their labeling is false or misleading.

d.      The prescription drugs AndroGel and/or Testim are misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. §352 are not prominently placed thereon with such conspicuousness and in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.      The prescription drugs AndroGel and/or Testim are misbranded pursuant to 21 U.S.C.§352 because the labeling does not (i) bear adequate directions for use, and/or (ii) bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.      The prescription drugs AndroGel and/or Testim are misbranded pursuant to 21 U.S.C.§352 because they are dangerous to health when used in the dosage, manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.      The prescription drugs AndroGel and/or Testim do not contain adequate directions for use pursuant to 21 CFR §201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of:

(1) statements of all conditions, purposes, or uses for which they are intended, including conditions, purposes, or uses for which they are prescribed, recommended or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used;

(2) quantity of dose, including usual quantities for each of the uses for which they are intended and usual quantities for persons of different ages and different physical conditions;

(3) frequency of administration or application;

(4) duration or administration or application; and/or

(5) route or method of administration or application.

h.      The Defendants violated 21 CFR §201.56 because the labeling o f AndroGel and/or Testim was not informative and accurate.

i.      The prescription drugs AndroGel and/or Testim are misbranded pursuant to 21 CFR§201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate,

14

false, or misleading.

j.      The Defendants violated 21 CFR §201.57 by failing to provide information that is important to the safe and effective use of their respective drugs, including the potential of AndroGel and/or Testim to cause severe adverse health events, including heart attacks and strokes, and the need for regular and consistent monitoring to ensure that a potentially fatal condition has not developed.

k.      Defendants violated 21 CFR §201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took their respective prescription drugs, AndroGel and Testim.

l.      Defendants violated 21 CFR §201.57 because the safety considerations regarding their respective prescription drugs AndroGel and Testim are such that the drugs should be reserved for certain situations, and the Defendants failed to state such information.

m.      The prescription drugs AndroGel and/or Testim are mislabeled pursuant to 21 CFR§201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n.      The prescription drug Testim® is mislabeled pursuant to 21 CFR §201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o.      The Defendants violated 21 CFR §201.57 because the labeling failed to list the adverse reactions that occur with their respective prescription drugs AndroGel and/or Testim and other drugs in the same pharmacologically active and

15

chemically related class.

p.      The Defendants violated 21 CFR §201.57 because the possibility that a patient could develop cardiovascular disease and strokes is significantly more severe than the other reactions listed in the adverse reactions, and yet Defendants failed to list the development of same before the other adverse reactions on the labeling of the prescription drugs AndroGel and Testim.

q.      The prescription drugs AndroGel and/or Testim are mislabeled pursuant to 21 CFR§201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r.      The prescription drugs AndroGel and/or Testim violate 21 CFR §210.1 because the process by which they were manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that they meet the requirements as to safety and meet the quality and purity characteristics that they purport or are represented to possess.

s.      The prescription drugs AndroGel and/or Testim violate 21 CFR §210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t.      The prescription drugs AndroGel and/or Testim violate 21 CFR §211.165 because the test methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity,

16

specificity, and/or reproducibility of test methods have not been properly established and documented.

u.      The prescription drugs AndroGel and/or Testim violate 21 CFR §211.165 in that the they fail to meet established standards or specifications and any other relevant quality control criteria.

v.      The prescription drugs AndroGel and/or Testim violate 21 CFR §211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drugs AndroGel and/or Testim were not followed.

w.      The prescription drug Testim® violates 21 CFR §310.303 in that the prescription drug Testim® is not safe and effective for its intended use.

x.      The Defendants violated 21 CFR §310.303 because they failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of their applications to the FDA.

y.      The Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with their respective prescription drugs AndroGel and/or Testim as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

z.      The Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with their respective prescription drugs AndroGel and/or Testim, and evaluating the causes of the

adverse events.

aa.     The Defendants violated 21 CFR §§310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb.     The Defendants violated 21 CFR §§310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc.     The Defendants violated 21 CFR §§310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

dd.     The Defendants violated 21 CFR §312.32 because they failed to review all information relevant to the safety of their respective prescription drugs AndroGel and/or Testim or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee.     The Defendants violated 21 CFR §314.80 by failing to provide periodic reports to the FDA containing

        (1) narrative summaries and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting

interval;

(2) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report; and/or

(3) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff.     The Defendants violated 21 CFR §314.80 by failing to submit copies of published articles from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

65.     Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as Rafael Barrios, making the AndroGel Defendants and the Testim Defendant liable under Louisiana law.

## CAUSES OF ACTION:

## FIRST CAUSE OF ACTION: Construction or Composition Defect under La. R.S. 9:2800.55

66.     Plaintiffs repeat, reiterate, and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

67.     At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling their respective drugs, AndroGel and Testim.

68.     At all times material to this action, AndroGel and/or Testim were expected to reach, and did reach, consumers in the State of Louisiana and throughout the United States, including Barrios, without substantial change in the condition in which it was sold.

69.     At all times material to this action, AndroGel and/or Testim were designed,

developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by The AndroGel Defendants and the Testim Defendant respectively, in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

      a.    When placed in the stream of commerce, the respective drugs contained manufacturing defects which rendered the subject product unreasonably dangerous;

      b.    The subject products' manufacturing defects occurred while the product as in the possession and control of their respective manufacturers;

      c.    The subject products were not made in accordance with the Defendants' respective specifications or performance standards; and

      d.    The subject products' manufacturing defects existed before they left the control of the AndroGel Defendants and/or the Testim Defendant.

70.    The subject products manufactured and/or supplied by the AndroGel Defendants and the Testim Defendant, respectively, were defective in construction or composition in that, when they left the Defendants' hands, they deviated in material ways from the respective Defendants' manufacturing performance standards and/or they differed from otherwise identical products manufactured to the same design formulas. In particular, the products are not safe, have numerous and serious side effects, and causes severe and permanent injuries including, but not limited to, developing cardiovascular disease, strokes, and myocardial infarctions. These products were unreasonably dangerous in construction or composition as provided by La. R.S. 9:2800.55.

**SECOND CAUSE OF ACTION: Design Defects under La. R.S. 9:2800.56**

71.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

72.    AndroGel and/or Testim are defective in their design or formulation in that they are not reasonably fit, suitable, or safe for their intended purposes and/or that the foreseeable risks exceed the benefits associated with their design and formulation. The subject products were unreasonably dangerous in design as provided by La. R.S. 9:2800.56.

73.    At all times material to this action, AndroGel and Testim wwew expected to reach, and did reach, consumers in the State of Louisiana and throughout the United States, including Barrios, without substantial change in the condition in which it was sold.

74.    At all times material to this action, AndroGel and Testim were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the AndroGel Defendants and the Testim Defendant, respectively, in defective and unreasonably dangerous conditions at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

   a. When placed in the stream of commerce, AndroGel and/or Testim contained unreasonably dangerous design defects and were not reasonably safe as intended to be used, subjecting Rafael Barrios to risks that exceeded the benefits of the subject product, including, but not limited to, permanent personal injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarctions, and other serious injuries and side effects;

   b.    When placed in the stream of commerce, AndroGel and/or Testim were defective in design and formulation, making the use of AndroGel and/or Testim

more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other medications and similar drugs on the market to treat low testosterone;

c.     The design defects of AndroGel and/or Testim existed before they left the control of the AndroGel Defendants and the Testim Defendant, respectively;

d.     AndroGel and/or Testim were insufficiently tested;

e.     AndroGel and/or Testim caused harmful side effects that outweighed any potential utility; and

f.     AndroGel and/or Testim were not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Barrios, of the full nature and extent of the risks and side effects associated with thei use, thereby rendering the AndroGel Defendants and the Testim Defendant liable to Plaintiffs.

75.     In addition, at the time the subject products left the control of their respective Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Barrios' injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Barrios' injuries without substantially impairing the products' utility.

**THIRD CAUSE OF ACTION: Inadequate Warning under La. R.S. 9:2800.57**

76.     Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

77.     AndroGel and/or Testim were defective and unreasonably dangerous when they

left the possession of the AndroGel Defendants and the Testim Defendant, respectively, in that they contained warnings insufficient to alert consumers, including Barrios, of the dangerous risks and reactions associated with the subject products, including but not limited to their propensity to cause permanent physical injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarcts, and other serious injuries, side effects, and death; notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other forms of treatment for low testosterone. Thus, the subject products were unreasonably dangerous because adequate warnings were not provided pursuant to La. R.S. 9:2800.57.

78.    The subject products manufactured and supplied by the respective Defendants were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of the subject products, the AndroGel Defendants and/or the Testim Defendant failed to provide a adequate warnings to consumers and/or their health care providers of the defects of the respective products, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that the product could cause serious injury and/or death.

79.    Barrios was prescribed and used the subject products for their intended purpose.

80.    Barrios could not have discovered any defect in the subject products through the exercise of reasonable care.

81.    Defendants, as manufacturers and/or distributors of their respective subject prescription products, are held to the level of knowledge of an expert in the field.

82.    Defendants, as manufacturers and/or distributors of their respective subject

prescription products, are held to a level of knowledge of an expert in the field as the Reference

Listed Drug Company and the New Drug Application Holder.

83. The warnings that were given by the Defendants for their respective products were not accurate, clear, and/or were ambiguous.

84. The warnings that were given by Auxilium failed to properly warn physicians of the increased risks of permanent physical injuries including, but not limited to, developing serious injuries, side effects and death.

85. Barrios, individually and through his prescribing physician, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants.

86. Defendants had the continuing duty to warn Barrio of the dangers associated with their respective products, AndroGel and Testim.

87. Had Barrios received adequate warnings regarding the risks of the subject products, he would not have used them.

**FOURTH CAUSE OF ACTION: Breach of Express Warranty under La. R.S. 9:2800.58**

88. Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

89. The AndroGel Defendants and the Testim Defendant expressly represented to Barrios, other consumers, and the medical community that AndroGel and/or Testim, respectively, were safe and fit for their intended purposes, were of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

90. Neither AndroGel nor Testim conform to the respective Defendants' express representations because they are not safe, have numerous and serious side effects, and cause severe and permanent injuries, including, but not limited to, developing cardiovascular disease,

strokes, myocardial infarctions and other serious injuries and side effects.

91.     At the time of the making of these express warranties, Defendants knew, or in the exercise of reasonable care should have known, of the purpose for which their respective subject products were to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purposes. The subject products were unreasonably dangerous because they failed to conform to the respective Defendants' expressed warranties as provided by La. R.S. 9:2800.58.

92.     At the time of the making of the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that their respective subject products were not safe and fit for their intended use and, in fact, produce serious injuries to the user.

93.     At all relevant times AndroGel and/or Testim did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

94.     Barrios, other consumers, and the medical community relied upon Defendants' respective express warranties.

## FIFTH CAUSE OF ACTION: Redhibition

95.     Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

96.     The subject products contain a vice or defect which renders them useless or their use so dangerous that buyers would not have purchased the respective products.

97.     The Defendants sold and promoted their respective products, AndroGel and Testim, which they placed into the stream of commerce. Under Louisiana law, the sellers warrant the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. The

subject products sold and promoted by the respective Defendants, possess redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or are unreasonably dangerous, as described above, which renders the subject products useless or so inconvenient that it must be presumed that a buyer would not have bought the subject products had he known of the defects. Pursuant to La. C.C. art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject products.

98.    The subject products alternatively possess redhibitory defects because the subject products were not manufactured and marketed in accordance with industry standards and/or are unreasonably dangerous, as described above, which diminishes the value of the subject products so that it must be presumed that a buyer would still have bought them but for a lesser price. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

99.    Defendants are liable as bad faith sellers for selling their respective defective products with knowledge of the defect, and thus, are liable to Plaintiffs for the price of the subject products, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject products and attorneys' fees. As the manufacturers of the respective subject product, under Louisiana law,  Defendants are deemed to know that their products, AndroGel and Testim, respectively, possessed redhibitory defects. La. C.C. art. 2545.

**SIXTH CAUSE OF ACTION: Breach of Warranty of Fitness for Ordinary Use**

100.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

101.    In addition to warranting against redhibitory defects, Defendants warrant, as a matter of law, that the respective subject products are reasonably fit for their ordinary and intended use. La. C.C. art. 2524.

102.    The subject products are not safe, have numerous and serious side effects and cause severe and permanent injuries including, but not limited to, developing cardiovascular disease, strokes and other serious injuries and side effects. As a result, AndroGel and/or Testim are unfit and inherently dangerous for ordinary use.

103.    As a direct and proximate result of Defendants' actions, Barrios has and will sustain significant injuries, damages, and losses, including, but not limited to: pain and suffering, medical and related expenses, loss of income and support, and diminished economic horizons.    Plaintiffs have also suffered and will continue to suffer other losses and damages, including, but not limited to: diminished capacity for the enjoyment of life, a diminished quality of life, loss of love and affection, and loss of consortium.

**SEVENTH CAUSE OF ACTION:**
**Breach of Implied Warranty of Merchantability and Fitness**

104.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint as detailed above, with the same force and effect as if stated herein.

105.    At all relevant times, Defendants knew of the use for which their respective products, AndroGel and/or Testim, were intended and impliedly warranted these products to be of merchantable quality and safe and fit for such use.

106.    Defendants were aware that consumers, including Barrios, would use AndroGel and/or Testim for treatment or prevention of male hypogonadism/ low testosterone.

107.    Barrios and the medical community reasonably relied upon the judgment and sensibility of Defendants to sell their respective products, AndroGel and Testim, only if they were indeed of merchantable quality and safe and fit for their intended use.

108.    Defendants breached their implied warranty to consumers, including Barrios, as their respective products, AndroGel and/or Testim, were not of merchantable quality or safe and

fit for their intended use.

109.   Consumers, including Barrios and the medical community, reasonably relied upon Defendants' implied warranties for their respective products, AndroGel and/or Testim.

110.   AndroGel and/or Testim reached consumers, including Barrios, without substantial change in the condition in which they were manufactured and sold by the respective Defendants.

**EIGHTH CAUSE OF ACTION: Fraud**

110.   Plaintiffs adopt by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if stated herein.

111.   Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and distributed their respective products, AndroGel and/or Testim, until the present, willfully deceived B a r r i o s and his family by concealing from them, B a r r i o s ' physicians, and the general public the true facts concerning AndroGel and/or Testim, which the respective Defendants had a duty to disclose.

112.   At all times herein mentioned, the respective Defendants, conducted sales and marketing campaigns to promote the sale of AndroGel and/or Testim and willfully deceived Barrios and his family, Barrios' physicians, and the general public as to the benefits, health risks and consequences of using AndroGel and/or Testim. Defendants knew of the foregoing, respectively, that AndroGel and/or Testim are not safe, fit, and effective for human consumption, that using AndroGel and/or Testim is hazardous to health, and that AndroGel and/or Testim has serious propensity to cause serious injuries to its users, including but not limited to the injuries Barrios suffered.

113.   The respective Defendants concealed and suppressed the true facts concerning

AndroGel and/or Testim with the intent to defraud, in that Defendants knew that Barrios' physicians would not prescribe their testosterone products, and Barrios would not have used AndroGel and/or Testim, if they were aware of the true facts concerning the products' dangers.

114.    As a result of the AndroGel Defendants' and/or the Testim Defendant's fraudulent and deceitful conduct, Plaintiffs suffered injuries and damages as alleged herein.

**NINTH CAUSE OF ACTION: Negligent Misrepresentation**

115.    Plaintiffs adopt by reference each and every paragraph of the Complaint applicable to all counts of this Complaint, and each and every count of this Complaint as if stated herein.

116.    From the time A n d r o G e l a n d / o r Testim was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations about their respective products to Barrios and his family, Barrios' physicians, and the general public, including but not limited to the misrepresentations that AndroGel and/or Testim were safe, fit, and effective for human consumption. At all times mentioned, Defendants conducted sales and marketing campaigns to promote the sale of AndroGel and Testim, respectively, and willfully deceive Barrios and his family, Barrios' physicians, and the general public as to the health risks and consequences of the use of the abovementioned products.

117.    Defendants made the foregoing  representations about their respective products without  any  reasonable grounds for believing them to be true. These representations were made directly by the AndroGel Defendants and/or the Testim Defendant, by sales representatives and other authorized agents of t h e  r e s p e c t i v e  D e f e n d a n t s , and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject products.

118.    The representations by the Defendants were in fact false, in that AndroGel and/or

29

Testim are not safe, fit and effective for human consumption, using AndroGel and/or Testim is hazardous to health, and AndroGel and/or Testim has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Barrios.

119.   The foregoing representations by Defendants, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of AndroGel and/or Testim, respectively.

120.   In reliance of the misrepresentations by the Defendants, and each of them, Barrios was induced to purchase and use AndroGel and Testim. If Barrios had known of the true facts and the facts concealed by Defendants, Barrios would not have used AndroGel or Testim. The reliance of Barrios upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

121.   As a result of the foregoing negligent misrepresentations by Defendants, Plaintiffs, suffered injuries and losses as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Rafael Barrios and his wife, Connie Barrios, pray for judgment against the Defendants, AbbVie, Inc., Abbot Laboratories, Inc. and Auxilium Pharmaceuticals, Inc., as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiffs:

A.  General damages in an amount that will conform to proof at time of trial;

B.  Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

C.  Loss of earnings and impaired earning capacity according to proof at the time of trial;

D.  Medical expenses, past and future, according to proof at the time of trial;

E.  For past and future mental and emotional distress, according to proof;

F.  Damages for loss of care, comfort, society, companionship and consortium in an amount within the jurisdiction of this Court and according to proof;

G.  For punitive or exemplary damages according to proof on the proper causes of action;

H.  Restitution, disgorgement of profits, and other equitable relief;

I.  Injunctive relief;

J.  Attorney's fees;

K.  For costs of suit incurred herein;

L.  For pre-judgment interest as provided by law; and

M.  For such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demands a trial by jury on all counts and as to all issues.

Dated: April 10, 2014                    Respectfully submitted,

*/s/* Maury A. Herman
Maury A. Herman (La Bar. No. 6815)
Leonard Davis (La Bar. No. 14190)
Aaron Z. Ahlquist (La Bar. No. 29063)
**Herman, Herman & Katz, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
(504) 581-4892
(504) 561-6024
***Attorneys for Plaintiffs***